IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

ANTHONY HILL, )
)
      Plaintiff, )
)
vs. ) Case No. CIV-15-881-C
)
CITY OF OKLAHOMA CITY, et al., )
)
      Defendants. )

MEMORANDUM OPINION AND ORDER

Now before the Court is Defendant City of Oklahoma City's ("OKC") Motion for Summary Judgment (Dkt. No. 38) and Defendant Bill Citty's ("Citty") Motion for Summary Judgment (Dkt. No. 40). Plaintiff has responded and both Motions are now at issue.

I. Background

This case concerns an altercation between police officers (Defendants Jeffrey Coffey, Christopher Schubert, Austin Childs, and Timothy Owens) and Plaintiff Anthony Hill that took place at about 1:55 a.m. on March 2, 2012, when Coffey initiated a traffic stop in Oklahoma City near an apartment complex. Plaintiff was driving the vehicle. Coffey stated he observed the vehicle straddling lane lines, so he conducted a field sobriety test on Plaintiff. Whether Plaintiff committed a traffic violation and whether he passed the sobriety test is disputed. After the test was complete, Coffey asked or told Plaintiff to sit in the back seat of the patrol car. Officer Childs, who observed Coffey initiate the traffic

stop, arrived shortly thereafter. When Plaintiff did not sit in the patrol car, the two officers attempted to place Plaintiff in handcuffs.

The accounts of what followed differ. According to the officers, Plaintiff was belligerent and Coffey deployed a Taser to immobilize Plaintiff and place him in handcuffs. Childs called Shubert, a Drug Recognition Expert Officer, to the scene. Owens also responded. Plaintiff stood up and when the four officers tried to place Plaintiff in the patrol car, he broke free and rushed at the officers. This is when the officers Tased Plaintiff a second time, put him in maximal restraints, and loaded him into the patrol car.

According to Plaintiff, Coffey and Childs punched him about ten times each, Tased him, and kicked him many times in the body and head before placing him in handcuffs and then in the patrol car. Plaintiff was dragged out of the patrol car and the four officers punched, kicked, and Tased him again, with the entire incident lasting 50 minutes to an hour.

Non-defendant Lt. Bullard was also present during the incident but it is unclear exactly when he arrived and what his role was during the altercation. Bullard states he attempted to grab Plaintiff before he was in handcuffs, but missed. While Plaintiff testified that after Coffey and Childs kicked and punched him, "the lieutenant" shot him with a Taser (Hill Deposition, Dkt. No. 38-70, p.7), he bases his arguments on the "grab and miss" line of events and never mentions Taser usage by Bullard in his responses to the dual motions for summary judgment. Bullard's version of events are consistent with the fact that Bullard was not certified to use a Taser and had not been issued one. (Citty Affidavit,

Dkt. No. 38-1.) For these reasons, the Court will accept the "grab and miss" version of events as undisputed fact. See Fed. R. Civ. P. 56(c)(1).

Defendants transported Plaintiff to Deaconess Hospital to remove the Taser probes and to determine whether Plaintiff was under the influence of drugs. For disputed reasons, no one performed medical tests on Plaintiff to detect intoxicating substances. Plaintiff's injuries were photographed and Bullard states he interviewed Plaintiff, and Plaintiff denies this fact. However, Plaintiff agrees Bullard did ask him questions.[1] Hospital staff released Plaintiff into police custody. The officers performed booking procedures and ultimately released Plaintiff.

Defendant Citty is the Oklahoma City Police Department Police Chief. Police procedures require a supervisor to investigate an officer's use of force beyond routine handcuffing. Once the investigation is complete, a Division Commander reviews it, and then a three-person Screening Committee determines if the use of force was justified and appropriate. Here, Bullard states he conducted a use of force investigation. This fact was problematic because in some arguments, Plaintiff disputes the fact, but several other places he claims a constitutional violation occurred because Bullard performed the investigation.

Based on the evidence presented, the Court will accept Bullard did conduct the required use of force investigation as an undisputed fact. See Fed. R. Civ. P. 56(c)(1). The Police Operations Manual requires the investigating superior to perform the following tasks

---

[1] See Hill Deposition, Dkt. No. 38-79, pp. 15-17 (Plaintiff stated he told Bullard his name and asked Bullard for help.) The Court assumes Plaintiff's argument is Bullard did not conduct a meaningful interview, rather than Bullard did not speak with him at all.

in the investigation: (1) interview all employees, suspects, and witnesses or take their statements, (2) take photographs of any injured person, and (3) take photographs of damaged property. (Police Operations Manual, Dkt. No. 38-54, p. 2.) The record includes a thirty-nine (39) page report that includes all the required items, plus other documentation. (Use of Force Report, Dkt. No. 38-43.) The report states Bullard interviewed Plaintiff while at the hospital and lists a few answers Plaintiff provided. (Use of Force Report, Dkt. No. 38-43, p. 5.) Plaintiff stated he answered some of Bullard's questions in the hospital. (Hill Deposition, Dkt. No. 38-79, pp 15-17.) The answers to the questions are disputed, but immaterial.

The incident resulted in Plaintiff's prosecution in the City of Oklahoma City Municipal Criminal Court for the following citations: straddling lane lines, interference with official process by resisting, driving under the influence, possession of marijuana, and assault and battery on a city official. The case was eventually dismissed on August 13, 2013, with the City of Oklahoma City stating "upon further review and investigation [the City] moves for dismissal of the above captioned action." (Mot. to Dismiss Municipal Case, Dkt. No. 47-12.) The Municipal Judge granted the Motion for good cause shown. (Order of Dismissal, Dkt. No. 47-12.)

Plaintiff alleged violations of his Fourth, Fifth, and Fourteenth Amendment rights and brought claims pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1985. The claims against OKC include malicious prosecution, conspiracy, failure to instruct, supervise, control, and discipline, and ratification. Plaintiff names Citty in his individual capacity and the claims

include conspiracy, failure to instruct, supervise, control, and discipline, and ratification. Plaintiff also requested punitive damages against both Defendants.

## II.  Standard

The standard for summary judgment is well established.  Summary judgment may only be granted if the evidence of record shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The movant bears the initial burden of demonstrating the absence of material fact requiring judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  A fact is material if it is essential to the proper disposition of the claim.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  If the movant carries this initial burden, the nonmovant must then set forth specific facts outside the pleadings and admissible into evidence which would convince a rational trier of fact to find for the nonmovant. Fed. R. Civ. P. 56(c).  All facts and reasonable inferences therefrom are construed in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The facts presented need not be produced in a form admissible at trial, "but the content or substance of the evidence must be admissible." Thomas v. Int'l Bus. Machines, 48 F.3d 478, 485 (10th Cir. 1995) (citation omitted).

## III.  Malicious Prosecution

Plaintiff's first cause of action is malicious prosecution brought pursuant to 42 U.S.C. § 1983.  Plaintiff brought the claim against Defendants Coffey, Childs, Schubert,

5

and Owens and the Court granted judgment in Defendants' favor. (Order, Dkt. No. 74.) Plaintiff's claim against OKC remains.[2]

To prevail on this claim, a plaintiff must show "(1) the defendant caused the plaintiff's confinement or prosecution; (2) the original action terminated in the plaintiff's favor; (3) there was no probable cause to confine or prosecute the plaintiff; (4) malice; and (5) damages." Cordova v. City of Albuquerque, 816 F.3d 645, 650 (10th Cir. 2016) (citation omitted). To be deemed favorable, the termination of a prosecution "must in some way indicate the innocence of the accused" and "the mere fact that a prosecutor [chose] to abandon a case [is] insufficient." Id. at 651 (citations and internal quotation marks omitted). The Tenth Circuit has recognized malice is present when "defendants purposely concealed and misrepresented material facts by manufacturing testimony for the state's key witnesses." Novitsky v. City of Aurora, 491 F.3d 1244, 1259 (10th Cir. 2007) (quoting Robinson v. Maruffi, 895 F.2d 649, 655 (10th Cir. 1990)) (internal quotation marks omitted).

OKC argues Plaintiff cannot show the action was terminated in his favor, he cannot show the prosecutors acted with malice in bringing the underlying case against him, nor does § 1983 recognize municipal liability for respondeat superior if its employees did act with malice. The Court previously found the grounds for dismissal of the municipal case were not in Plaintiff's favor and was not convinced otherwise by Plaintiff's repetitive

---

[2] Citty questions whether Plaintiff brings a claim against him and asserts an argument, but because Plaintiff does not respond, the Court finds even if there were a claim, it can be deemed confessed. See LCvR7.1(g).

arguments to the contrary. See Cordova v. City of Albuquerque, 816 F.3d at 650 (stating it is the plaintiff's burden to show the termination was favorable).

Plaintiff also focuses on the malice requirement, arguing the police officers made false statements to initiate the prosecution against Plaintiff. He states this was encouraged by OKC's policy allowing a witnessing employee who was involved in the altercation to conduct the use of force investigation. Here, Bullard was present at the altercation and attempted to grab Plaintiff but missed. Bullard's report was well-documented and reviewed by a three-person screening committee and received approval. Plaintiff argues because the officers' use of force was never examined by an impartial witness it was foreseeable to OKC that officers would make false statements. However, this argument is completely unsupported by fact or law. The relevant policies, procedures, and rules prohibit falsifying a police report. None of the arguments advanced by Plaintiff go towards whether the prosecutor had malicious intent in bringing the municipal case against Plaintiff.[3] Therefore, Plaintiff has not presented, nor has the Court located, a municipal policy or custom that could hold OKC liable for the officer's actions influencing a prosecutor under § 1983. See Novitsky, 491 F.3d at 1259. Accordingly, judgment is granted in favor of OKC on this claim.

---

[3] The time has passed for Plaintiff to argue the police officers, acting outside their scope of employment, offered false evidence and influenced the prosecutor's decision to bring charges. Plaintiff neglected this argument in the police officers' Motion for Summary Judgment briefs. See Order, Dkt. No. 74, p. 5.

7

## IV. Conspiracy

The third cause of action is conspiracy, which Plaintiff brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1985. Because the Complaint merely references "Defendants" without specifying which Defendants, the Court assumes the claim is brought against each Defendant. However, the facts relevant to a conspiracy to submit false evidence and cause Plaintiff to be wrongfully prosecuted apply to the police officer Defendants and not OKC and Citty. This information, coupled with Plaintiff's lack of response, is why the Court will grant judgment in favor of OKC and Citty. See LCvR7.1(g).

## V. Failure to Instruct, Supervise, Control, and Discipline

Plaintiff's fourth cause of action alleges several constitutional violations. He claims OKC's wrongful actions include its failure to instruct, supervise, control, and discipline the officers in their duties to refrain from using excessive force before, during, and after making an arrest and when using Tasers.

First, the Court will address the claim that OKC failed to train its officers in the use of force. To succeed with this claim, a plaintiff

> "must first prove the training was in fact inadequate, and then satisfy the following requirements:
>
> (1) the officers exceeded constitutional limitations on the use of force; (2) the use of force arose under circumstances that constitute [] usual and recurring situations with which police officers must deal; (3) the inadequate training demonstrates a deliberate indifference on the part[] of the city toward persons with whom the police officers come into contact, and (4) there is a direct causal link between the constitutional deprivation and the inadequate training."

Carr v. Castle, 337 F.3d 1221, 1228 (10th Cir. 2003) (citations omitted).

Plaintiff offers arguments related to Citty's personal opinion of the facts of this case rather than addressing the quality of training the officers received prior to the altercation. He presents almost no legal arguments in support of the failure to train claim. Plaintiff again offers Citty's personal opinions regarding Tasing rather than discussing the causal link between the constitutional deprivation and the training received. Judgment is granted in favor of OKC on this issue. See Glasco v. City of Oklahoma City, No. CIV-04-19-L, 2006 WL 2404949, at *4 n.2 (W.D. Okla. Aug. 15, 2006) (listing cases upholding OKC's use of force policies).

Plaintiff lists the claim that OKC failed to properly supervise its officers. OKC cannot be held liable unless it can be reasonably said it was "deliberately indifferent to the need for further training or supervision." Bryson v. City of Oklahoma City, 627 F.3d 784, 789 (10th Cir. 2010) (citation and internal quotation marks omitted). Deliberate indifference requires a showing that the municipality has "actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." Barney v. Pulsipher, 143 F.3d 1299, 1307 (10th Cir. 1998) (citation omitted). This may be established by showing a pattern of tortious conduct or if a violation of federal rights is a "highly predictable" or "plainly obvious" consequence of the municipality's action or inaction in the training and supervision. Id. at 1307-08. Plaintiff offers no factual or legal

argument related to the supervision or discipline of the officers and judgment is granted in favor of OKC on this issue.

Most of Plaintiff's arguments in the responses to the dual motions for summary judgment relate to Bullard's actions. Plaintiff asserts Bullard should not have been permitted to conduct the use of force investigation because he participated in the force against Plaintiff and therefore could not be an unbiased investigator.[4] However, "violation of a police department regulation is insufficient for [municipal] liability under section 1983." Wilson v. Meeks, 52 F.3d 1547, 1554 (10th Cir. 1995), abrogated on other grounds by Saucier v. Katz, 533 U.S. 194 (2001). Moreover, the Police Operations Manual does not require or prevent a supervisor present at the scene from conducting a use of force investigation. (Police Operations Manual, Dkt. No. 38-54, pp. 1-2.) Taking Plaintiff's allegations as true, Bullard falsifying the use of force report or being a biased investigator due to his involvement in the alteration did not cause a constitutional violation for two reasons: first, Plaintiff was not entitled to a use of force investigation and second, Citty and OKC are not liable under § 1983 because Plaintiff has not identified a viable theory of relief.

VI. Ratification

Also in the fourth cause of action, Plaintiff alleges OKC ratified the police officers' wrongful conduct and they knew or should have known the wrongs committed by the

---

[4] OKC objects to this claim because it was not mentioned in the Complaint or during discovery. The Court will address it only because it is closely tied to other issues Defendant argued.

officers were about to be committed, and they intentionally, knowingly, or recklessly failed to prevent them from happening.[5] OKC argues for favorable judgment as a matter of law.

The doctrine of respondeat superior cannot be used to hold a municipality liable under 42 U.S.C. § 1983 for the constitutional torts of its employees. See Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978). To succeed on a claim for monetary relief against OKC for the actions of its officers, Plaintiff must prove "(1) an officer committed a constitutional violation and (2) a municipal policy or custom was the moving force behind the constitutional deprivation that occurred." Estate of Larsen ex rel. Sturdivan v. Murr, 511 F.3d 1255, 1264 (10th Cir. 2008) (citation omitted). When the alleged unconstitutional action is taken by a person other than the municipal policymaker, i.e., a police officer rather than Citty himself, liability may attach where "a subordinate's position is subject to review by the municipality's authorized policymakers and the authorized policymakers approve a subordinate's decision and the basis for it." Moss v. Kopp, 559 F.3d 1155, 1169 (10th Cir. 2009) (citation omitted).

Monell provides the second element has two prongs: (a) Plaintiff must show the authorized policymakers, i.e., Citty and the Oklahoma City Council, made a conscious, affirmative choice "responsible for establishing final policy with respect to the subject matter in question;" Pembaur v. City of Cincinnati, 475 U.S. 469, 470 (1986); and (b) the ratification caused the alleged constitutional harm. See Monell, 436 U.S. at 692 (1978).

---

[5] Plaintiff has not asserted how policy was a moving force that intentionally, knowingly, or recklessly failed to prevent the alleged constitutional deprivations. To the extent Plaintiff is attempting to plead a negligence claim, the Court will not allow the argument's introduction at this stage.

Plaintiff's arguments on this issue are not clear. It could be that Plaintiff argues the municipality ratified the wrongful conduct by finding the use of force justified and appropriate following the use of force report. It also appears that Plaintiff argues causation appeared when OKC's policies deemed Taser usage before baton usage appropriate when an arrestee was handcuffed.[6] Plaintiff does not cite to the policy he vaguely references and he does not establish either of the second element's two prongs. These efforts are not sufficient. Judgment is granted in Defendant's favor.

## VII. Punitive Damages

Plaintiff claims punitive damages, but OKC correctly states a municipality cannot be held liable under 42 U.S.C. § 1983 for punitive damages. See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 259-60 (1981). Plaintiff offered no response and no punitive damages will be permitted.

## VIII. Other Claims Against Citty

Under the general § 1983 failure to instruct, supervise, control, and discipline claim, Citty raises qualified immunity concerning the use of force procedure. In order to overcome the defense of qualified immunity, a plaintiff "must establish that the defendant's conduct violated a federal constitutional or statutory right and that the right

---

[6] The relevant Police Operations Manual Procedure states a Taser may be used when "(a) [l]esser force options are[] likely to be ineffective, and (b) [t]he officer believes the suspect poses a credible threat, and (c) [t]he subject poses a threat from a distance and the officer is at risk of injury if he/she attempts to close the gap." (Police Operations Manual, Dkt. No. 38-24, p. 1.) The procedure could not be a moving force as Plaintiff alleges because it does not authorize Taser usage before baton usage; rather, the officer must first determine lesser force options are likely to be ineffective.

was clearly established at the time of the conduct." Hulen v. Yates, 322 F.3d 1229, 1237 (10th Cir. 2003) (citations omitted). If Plaintiff fails to establish either prong, Citty will prevail on the defense. See A.M. v. Holmes, 830 F.3d 1123, 1134-35 (10th Cir. 2016), cert. denied sub nom. A.M. v. Acosta ___ U.S. ___, 137 S.Ct. 2151 (2017).

Plaintiff claims Citty's implementation of the use of force procedure caused officers to violate Plaintiff's Fourth Amendment right protecting against unlawful seizures. Plaintiff states Citty knew of the policies outlining how an employee was to proceed using force and Tasers but he "elected to implement interpretations of these written policies that effectively nullified them." (Pl.'s Resp. to Citty, Dkt. No. 78, p. 13.) Plaintiff does not offer either arguments or evidence to show how Citty implemented incorrect interpretations of the correct policies. The only evidence offered is Citty's personal opinion that he would rather be Tased than hit with a baton. This does not establish any actions taken to implement police practices contrary to the policies. Plaintiff offers an alternative first prong: that in allowing Bullard to perform the use of force investigation, Citty violated the use of force procedure's clear intent to prevent conflicts of interest. However, Plaintiff's federal constitutional or statutory rights do not demand a use of force report investigation. Both of Plaintiff's first prong arguments must fail.

In regard to the second prong, Plaintiff points to his clearly established Fourth Amendment right to be free from unreasonable force and its reasonableness standard. See Graham v. Connor, 490 U.S. 386, 395-96 (1989). While one of the alleged violations does fall under the Fourth Amendment, Graham does not clearly establish a right to be free from incorrect interpretations of correct police policies. Id. The case offered is far too general

to support Plaintiff's proposition.  See White v. Pauly, ___ U.S. ___, 137 S. Ct. 548 (2017) (stating "clearly established law must be 'particularized' to the facts of the case") (citation omitted).  The second prong must fail.  Accordingly, Citty is granted qualified immunity on the § 1983 failure to train on the proper use of force claim.

Plaintiff also raises a supervisor liability issue.  To impose supervisor liability under § 1983, a plaintiff must show "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation."  Dodds v. Richardson, 614 F.3d 1185, 1199 (10th Cir. 2010).

Plaintiff argues that since Citty concluded the use of a Taser while Plaintiff was handcuffed with another officer was on top of him was a proper use of force, Citty should be liable under §1983.  This argument must fail because an after-the-fact approval cannot cause the alleged constitutional deprivation.  Cordova v. Aragon, 569 F.3d 1183, 1194 (10th Cir. 2009) (stating conduct that occurs after an alleged violation cannot be deemed to cause the violation).  Another argument offered is the investigation that the use of force was improper because Bullard was present and participated in the altercation.  However, Plaintiff fails to show what constitutional right was violated when Bullard conducted the investigation.  Taking all of Plaintiff's facts as true, the Court is satisfied that no constitutional violation occurred because Plaintiff is not entitled to a use of force investigation.  Plaintiff also attempts to attach liability through ratification, but as stated in

regard to the ratification claim brought against OKC, the allegations are not sufficient. None of Plaintiff's claims against Citty have merit. Judgment is granted in favor of Citty.

## CONCLUSION

For the reasons stated herein, OKC's Motion for Summary Judgment (Dkt. No. 38) is GRANTED. Citty's Motion for Summary Judgment (Dkt. No. 40) is GRANTED. No claims remain against Defendant OKC or Defendant Citty. The claim remaining against Defendants Coffey, Childs, Schubert, and Owens is a Fourth Amendment excessive force violation. Judgment shall issue at the conclusion of this case. The Court shall also issue an Amended Scheduling Order to put the case back on the trial docket now that all issues of qualified immunity have been resolved and the stay is no longer in effect. See Dkt. No. 71.

IT IS SO ORDERED this 11th day of September, 2017.

_____
ROBIN J. CAUTHRON
United States District Judge